EXHIBIT A

Part 1

Notice of Administrative Motion to Relate Cases in *Avila v. Ford Motor C*o., Case No. 5:22-cv-00542-PCP (N.D. Cal.)

Payam Shahian (SBN: 228406)
pshahian@slpattorney.com
Tionna Carvalho (SBN: 299010)
tcarvalho@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1888 Century Park East, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Attorneys for Plaintiff and for plaintiff in *Avila v. Ford Motor Company*, Case No.
5:22-cv-00542-PCP

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT AVILA<br><br>                    Plaintiff,<br><br>    vs.<br><br>FORD MOTOR COMPANY.<br><br>                    Defendant. | CASE NO.  5:22-cv-00542-PCP<br><br>**NOTICE OF FILING OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**<br><br>*[Civil L.R. 3-12]*<br><br>Hon. P Casey Pitts<br><br>Crtrm: 8 |

1

NOTICE OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD
BE RELATED

# NOTICE OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that on April 17, 2026, Robert Avila, through counsel, filed an Administrative Motion to Consider Whether Cases Should Be Related and a supporting Declaration of Payam Shahian (collectively, the "Motion") in *Avila v. Ford Motor Company*, Case No. 5:22-cv-00542-PCP (N.D. Cal.), which is assigned to the Honorable P. Casey Pitts.

The Motion requests that this Court relate 56 pending actions—including this action—to the *Avila* action pursuant to Civil Local Rule 3-12.

All 56 actions are pending in the Northern District of California, name Ford Motor Company as the sole defendant, and involve substantially similar claims concerning alleged defects in Ford's 10R80 automatic transmission. The *Avila* action is the lowest-numbered and earliest-filed of these cases.

Pursuant to Civil Local Rule 3-12, counsel for Robert Avila and Annettee Avila hereby files this Notice to alert the Court to the pending Motion.

A true and correct copy of the Administrative Motion to Consider Whether Cases Should Be Related, along with the supporting Declaration of Payam Shahian and exhibits thereto, are attached hereto as **Exhibit A**.

Date: April 21, 2026

STRATEGIC LEGAL PRACTICES, APC

By: */s/ Payam Shahian*

Payam Shahian
Attorneys for Plaintiff ROBERT AVILA

NOTICE OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

Part 2

Notice of Administrative Motion to Relate Cases in *Marx v. FCA US, LLC*, Case No. 5:24-cv-06870-BLF (N.D. Cal.)

Payam Shahian (SBN 228506)
pshahian@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1888 Century Park East, Floor 19
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Dara Tabesh (SBN 230434)
e-mail: dara.tabesh@ecotechlaw.com
ECOTECH LAW GROUP, P.C.
5 3rd St. Ste. 700
San Francisco, CA 94103
Telephone:     (415) 503-9164
Facsimile:     (415) 651-8639

Attorneys for Plaintiffs Joshua and Elizabeth Marx

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOSHUA P MARX AND ELIZABETH MARX,

Plaintiff,

vs.

FCA US, LLC; and DOES 1 through 10, Inclusive,

Defendant.

CASE NO. 5:24-CV-06870-BLF

(Removed from Santa Clara County Superior Court, Case No. 24CV446001)

**PLAINTIFFS' ADMINISTRATIVE MOTION TO RELATE CASES**

ADMINISTRATIVE MOTION TO RELATE CASES

## I.     INTRODUCTION

Pursuant to Civil Local Rules 3-12 and 7-11, plaintiffs Joshua and Elizabeth Marx respectfully move the Court to consider whether *Zand v. FCA US, LLC*, Case No. 5:25-CV-10257-BLF ("*Zand*") and *Olsen v. FCA US, LLC*, Case No. 5:26-CV-01369-PCP ("*Olsen*") should be related to this case, *Marx v. FCA US, LLC*, Case No. 5:24-CV-06870-BLF ("*Marx*").

All three cases involve the same defendant, substantially similar allegations, and bring Song-Beverly Consumer Warranty Act and fraudulent concealment claims. Plus, *Marx*, as the earliest-filed and lowest-numbered case, is the furthest along: after an extensive discovery process, this Court has considered and resolved discovery disputes and other legal issues that will recur in both the *Zand* and *Olsen* actions.

Accordingly, relating these substantially similar cases before this Court will prevent conflicting rulings on shared legal questions, eliminate duplicative discovery and labor, and promote judicial efficiency.

## II.     DISCUSSION

Civil Local Rule 3-12(a) provides that actions should be related if: "(1) The actions concern substantially the same parties, property, transaction, or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civ. L.R. 3-12(a). Both criteria are satisfied here.

### A.     The Actions All Concern The Same Defendant And Substantially The Same Transaction Or Event.

All three actions turn on the same "transaction" or "event" because they all concern defects in FCA's Chrysler Pacifica Plug-in Hybrid Electric Vehicles (PHEVs) equipped with 3.6L engines and FCA's knowledge of such defects.

In *Marx*, Plaintiffs alleged that their Chrysler Pacifica Hybrid Electric Vehicle (PHEV) suffered from engine and transmission defects that could cause the car to stall, shut off, and/or lose power at random times. (*See* Dkt. 1-1, Ex. A (Marx Complaint) 8-9.)  They also alleged that

1

ADMINISTRATIVE MOTION TO RELATE CASES

FCA US LLC ("FCA") had exclusive knowledge of these defects acquired through sources unavailable to consumers, and that FCA fraudulently concealed these defects from plaintiffs. (*Id.* at 9, 18-20.) The *Marx* plaintiffs asserted Song-Beverly Consumer Warranty Act and fraudulent concealment claims against FCA on these grounds. (*Id.* at 15-20.)

The plaintiffs in the two related actions—*Zand* and *Olsen*—have brought substantially similar claims premised on materially identical facts against FCA. Indeed, the parallels are striking, as illustrated by comparing the specific allegations and experiences across all three cases:

- All plaintiffs are California consumers who purchased PHEVs manufactured and/or distributed by FCA, and equipped with 3.6L engines. (Dkt 1-1, Ex. A ¶¶ 7-8; Olsen Compl. ¶¶ 1, 4; Zand Compl. ¶¶ 1-3.)

- All plaintiffs allege that FCA knew of but concealed defects in the PHEVs' engines that caused stalling and loss of power in the PHEVs. (Dkt. 1-1, Ex. A ¶¶ 8-9; Olsen Compl. ¶¶ 4-5; Zand Compl. ¶¶ 2-3.)

- All plaintiffs allege that FCA acquired knowledge of the defects through sources unavailable to consumers, including testing data, early consumer complaints, aggregate warranty data compiled from dealers, testing conducted in response to complaints, and warranty repair data. (Dkt. 1-1, Ex. A ¶¶ 9-12; Olsen Compl. ¶¶ 4-6; Zand Compl. ¶¶ 3-5.)

- All plaintiffs assert substantially the same legal claims against FCA, including Song-Beverly Consumer Warranty Act and fraudulent concealment claims. (Dkt 1-1, Ex. A ¶¶ 15-20; Olsen Compl. ¶¶ 10-16; Zand Compl. ¶¶ 6-11.)

Thus, all three cases involve the same defendant, raise substantially the same allegations (*i.e.*, that FCA knew that their PHEVs had engine defects that caused stalling or shutting off, but fraudulently concealed that from consumers), and bring the same Song-Beverly Consumer Warranty Act and fraudulent concealment claims. The three cases are thus "substantially the same" within the meaning of rule 3-12. *See Does 1-3 v. Roblox Corporation*, No. 26-CV-00271-

2

ADMINISTRATIVE MOTION TO RELATE CASES

RS, 2026 WL 446259 at *1 (N.D. Cal. Feb. 17, 2026) (cases were substantially related even where they alleged different harms, because they shared the same "key defendant party" and allegations "related to that defendant's conduct").

**B.      Separate Adjudication Would Create Duplicative Labor And Risk Conflicting Results.**

As the earliest filed case, the *Marx* action is the furthest along. Filed in 2024, *Marx* has been litigated for two-and-a-half years, during which time this Court (Hon. Beth Labson Freeman and Hon. Susan Van Keulen) acquired familiarity with and resolved issues directly relevant to the *Zand* and *Olsen* actions.

For example, in February 2026, Judge van Keulen addressed the applicability of Code of Civil Procedure section 871.26 to the discovery process (Dkt. 38 at 2-3 (ordering parties to produce, for documents listed, *inter alia*, in 871.26(h), "keys to all codes and abbreviations such that the content of each document is clear and comprehensible" and ordering the parties to meet and confer on "the role of Cal. Code Civ. Proc. § 871.26" to resolving their discovery dispute (*see* Dkt. 53 at 2:5-6)), and confirmed that manufacturers must search for and produce all relevant documents found on their databases they have in their possession, control, or to the extent they have "the legal right to obtain" any such documents upon demand (Dkt. 38 at 2-3). Questions on the documents that FCA has "possession" or "control" over and the databases FCA must search are plainly just as relevant to *Zand* and *Olsen*—and that FCA will almost certainly try to relitigate if the cases remain separate even if they agreed to produce them in this case.

Judge van Keulen, following the parties meet-and-confer efforts on the date of the Motion to Compel hearing, also ordered FCA to produce all documents and communications with NHTSA relating to three NHTSA investigations into loss of motive power in PHEVs, as well as Subject Vehicle documents that would be found on FCA's Dealer Connect portal. (Dkt. 53 at 5-6.)  These documents concerning the PHEVs and three separate NHTSA investigations, the applicability of section 871.26 to discovery proceedings, and the definition of "control" for production purposes, will be equally central to the claims in the *Zand* and *Olsen* actions. After

3

ADMINISTRATIVE MOTION TO RELATE CASES

all, those actions, just like *Marx*, allege that FCA knew of the engine defects in PHEVs that caused stalling/loss of power (which the documents concerning the PHEVs and the NHTSA investigations are relevant to proving). Similarly, the definition of "control," and the applicability of section 871.26 will be crucial in defining the discovery obligations of the parties in the *Zand* and *Olsen* actions.

Recognizing the overlap between the cases, in April 2026, Plaintiffs' counsel met-and-conferred with FCA's counsel about stipulating to relate *Zand* and *Olsen* to *Marx*, since doing so would save time, energy, and resources of all involved by allowing the parties to narrow the issues in those actions based on this Court's prior rulings. However, FCA did not respond to Plaintiffs' proposal.

But allowing the *Zand* and *Olsen* actions to proceed before different judges with less (or no) familiarity with these issues result in duplication of work and potentially conflicting rulings, including:

1. Duplicative briefing on and potentially conflicting rulings as to what constitutes "control" for production purposes.

2. Duplicative briefing on and potentially conflicting rulings as to the applicability of section 871.26 to the discovery process.

3. Duplicative discovery from FCA concerning the three NHTSA investigations into loss of motive in PHEVs and the numerous internal documents concerning the PHEVs.

4. Risk of inconsistent rulings as to whether the NHTSA documents establish FCA's knowledge of the defects and whether FCA had a duty to disclose those defects.

5. Duplicative expert discovery concerning the same technical issues regarding PHEV defects and FCA's knowledge of the defects.

Relating the *Zand* and *Olsen* actions before this Court will eliminate these inefficiencies and ensure consistent application of governing legal standards to the benefit of all parties and the Court. The Court should relate the cases.

ADMINISTRATIVE MOTION TO RELATE CASES

In fact, when FCA removed *Zand* and *Olsen*, it was obligated to notify the Court that those two cases are related to *Marx, see* Civil Local Rule 3-12(b)—after all, FCA is a common defendant in all three cases involving the same issues. By failing to meet this obligation, FCA has risked duplicative litigation over the same issues before different judges. This burden falls disproportionately on overworked courts and individual plaintiffs whose attorneys often work on contingency, while FCA—a global auto manufacturer—exploit[s] this vulnerability opportunistically as a strategic advantage in litigation, dragging out the process in hopes of exhausting the resources and morale of consumers and their contingent fee consumer protection attorneys." Brief for Consumers for Auto Reliability and Safety (CARS) at 8, as *Amici Curiae* Supporting Petitioner, *Niedermeier v. FCA US LLC*, 15 Cal.5th 792 (Cal. 2024) (No. S266034); *see also Figueroa v. FCA US, LLC*, 84 Cal.App.5th 708, 714 (Cal. Ct. App. 2022) ("FCA operates in open defiance of the Song-Beverly Act"). Piecemeal litigation across multiple courts is a cost FCA can easily absorb, while courts and plaintiffs struggle. To avoid unnecessarily duplicative litigation by the parties, the Court should relate these three cases. *See Niedermeier v. FCA US LLC*, 15 Cal. 5th 792, 804 (2024) (the Act is "'manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action.'") (quoting *Murillo v. Fleetwood Enterprises, Inc.*, 17 Cal.4th 985, 998) (1998)).

## III. CONCLUSION

Plaintiffs respectfully request that the Court find that the *Zand* and *Olsen* actions be related to *Marx v. FCA US LLC*, Case No. 5:24-CV-06870-BLF, pursuant to Civil Local Rule 3-12.

DATED: April 23, 2026

Respectfully submitted,
STRATEGIC LEGAL PRACTICES, APC
By: Payam Shahian
*/s/ Payam Shahian*
Attorney for Joshua & Elizabeth Marx

5
ADMINISTRATIVE MOTION TO RELATE CASES

Part 3

Brief filed in support of proposal re relating discovery efforts in Honda/Acura lemon law cases filed by Strategic Legal Practices, APC, in the Superior Court of California, Long Beach Division (Related Case: *Castrejon v. American Honda Motor Co.*, Case No . Case No. 25LBCV00825

Payam Shahian (SBN 228406)
pshahian@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1888 Century Park East, 19th Floor
Los Angeles, California 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Attorneys for SLP Plaintiffs

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

IN RE: HONDA/ACURA LEMON LAW
ACTIONS (SONG-BEVERLY CONSUMER
WARRANTY ACT — SLP CASES)

RELATED CASE: CASTREJON V.
AMERICAN HONDA MOTOR CO., INC.,

Case No. 25LBCV00825

Hon. Michael P. Vicencia
Dept. S26

**PLAINTIFFS' BRIEF IN SUPPORT OF
EARLY eVRM PRODUCTION AND
MANDATORY SETTLEMENT
CONFERENCES AS PREREQUISITES
TO FURTHER CASE MANAGEMENT**

TABLE OF CONTENTS

Page Number

I. INTRODUCTION…………………………………………………………… 1

II. DISCUSSION………………………………………………………………... 1

   A.  An eVRM Report Is The Single Most Important Document In A Song-Beverly Case, And Is Responsive To Dozens Of Discovery Requests………..   1

   B.  The Data Contained In An eVRM Report Is Relevant To All Song-Beverly Cases, Without Distinction………………………………………………   4

   C.  Requiring Production Of All eVRM Data Early On Substantially Reduces The Length And Burden Of Song-Beverly Cases……………………………..   7

      1.  eVRM Production Must Precede Mandatory Settlement Conferences…   7

      2.  If Not Directed to Produce the eVRM Data in Full, Honda Will Improperly Withhold Relevant Data—Resulting in Extensive Motion Practice and Protracted Litigation……………………………………   8

      3.  Producing paper records in piecemeal fashion will prolong litigation and result in incomplete productions………………………………   10

      4.  Because Plaintiffs will also commit to promptly producing relevant documents in their possession, Plaintiffs' proposal would make virtually any document-based discovery disputes unnecessary…………   11

   D.  Honda's Conclusory Objections Are Baseless…………………………...   12

III. CONCLUSION………………………………………………………………... 13

PLAINTIFFS' BRIEF IN SUPPORT OF EARLY eVRM PRODUCTION

TABLE OF AUTHORITIES

Case | Page Number

*Higginson v. Kia Motors America, Inc.* (2026) 341 Cal.Rptr.3d 732…………………… 8

*Krotin v. Porsche Cars N. Am., Inc.* (1995) 38 Cal.App.4th 294, 303, as modified on denial of reh'g (Sept. 14, 1995)…………………………………………………………… 1-2, 7, 10

*Kwan v. Mercedes-Benz of N. Am., Inc.* (1994) 23 Cal.App.4th 174, 185–186……… 6

*Oregel v. American Isuzu Motors*, Inc. (2001) 90 Cal.App.4th 1094, 1103–1104…… 7

*Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 46……………………….. 4

*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1162……………… 12

Statute

Civ. Code § 1790………………………………………………………………………….. 1

Civ. Code § 1793.2……………………………………………………………………….. 2, 4, 6

Civ. Code § 1794…………………………………………………………………………. 2, 6

PLAINTIFFS' BRIEF IN SUPPORT OF EARLY eVRM PRODUCTION

## I.    INTRODUCTION

This Court presides over approximately 900 cases filed by plaintiffs represented by Strategic Legal Practices, APC ("SLP") against American Honda Motor Co., Inc. ("AHM" or "Honda") under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 *et seq.*) and asserting fraudulent concealment claims.

At the April 1, 2026 hearing, this Court expressed concern about serial, case-by-case handling and directed the parties to meet and confer on a coordinated framework.  Plaintiffs respectfully submit that no meaningful case management—whether settlement conferences, consolidation decisions, or trial scheduling—can proceed without first requiring Honda to produce a single, readily available electronic document: the complete, unfiltered Electronic Vehicle Relationship Management ("eVRM") report for each subject vehicle.

Plaintiffs respectfully request that, as part of any Case Management Order, the Court direct Honda to produce all eVRM data and plaintiffs to produce all relevant documents in their possession within 60 days after the answer or other responsive pleading is filed, consistent with the deadlines set for disclosures under Code of Civil Procedure section 871.26, subdivisions (f) and (h).  Following both parties' production of documents, the Court should schedule mandatory settlement conferences ("MSCs").  This sequence is not only logical—it is compelled by binding authority, the realities of modern automotive record-keeping, and the Legislature's recent codification of manufacturer disclosure obligations.

## II.    DISCUSSION

### A.    An eVRM Report Is The Single Most Important Document In A Song-Beverly Case, And Is Responsive To Dozens Of Discovery Requests.

Honda's Electronic Vehicle Relationship Management system is a centralized electronic database that aggregates virtually every record Honda maintains about a given vehicle into a single, VIN-specific report. Over thirty years ago, the Court of Appeal recognized that "[c]omputerized recordkeeping at dealership service departments could easily facilitate" the task of tracking failed repair attempts, and that "a manufacturer is capable of becoming aware of every failed repair attempt" without direct consumer contact. (*Krotin v. Porsche Cars N. Am.,*

*Inc.* (1995) 38 Cal.App.4th 294, 303, as modified on denial of reh'g (Sept. 14, 1995).)  Honda's eVRM is precisely the computerized system *Krotin* envisioned.  It is, by far, the most instructive document in a Song-Beverly case.

A plaintiff bringing an express warranty claim under section 1793.2 must prove that the manufacturer failed to repair a warranted defect after a reasonable number of attempts, and did not promptly buy back or replace the vehicle.  (Civ. Code, § 1793.2, subd. (d).)  To receive a civil penalty award, the plaintiff must also prove that the manufacturer willfully violated either of those obligations. (Civ. Code § 1794, subds. (c), (e).)  The eVRM is directly relevant to each of these requirements—it documents every repair attempt, Honda's internal classification of each defect, and the information Honda had (or chose to ignore) when deciding whether to repurchase a vehicle.  The Court should order its production in all such cases to ensure that both parties—and the Court—have access to the complete record when evaluating these claims.

A complete eVRM Report contains the following sections, each of which is independently relevant to Song-Beverly and fraudulent concealment claims:

- **Vehicle Summary**: This section alone establishes the vehicle's identity, the warranty start date, and the engine/transmission platform at issue by identifying the vehicle's VIN, make, model, year, trim, engine type, transmission type, assembly factory, retail sales date, and selling dealer.

- **Battery Management Information System ("BMIS") Records**:  The BMIS section includes every battery test performed at any Honda dealer, including voltage readings, CCA measurements, pass/fail results, and battery replacement decisions. It also captures parasitic battery draw test results—the measured current a vehicle's systems continue to draw from the battery when the engine and ignition are off—which can explain other defects the vehicle is experiencing. These records are not available from any other source; customers do not receive copies.

- **Campaign and Recall Records**:  This section includes every recall, product update, warranty extension, and service campaign applicable to that VIN—including whether the campaign is open or closed, the completion date, and the associated service bulletin number.  This section reveals whether Honda knew of systemic defects affecting the vehicle and whether those defects were remedied.

- **Repair Orders (Customer Pay, Dealer Pay, and Warranty)**:  This section includes the complete service history across all Honda-authorized dealerships nationwide, including customer complaint descriptions, dealer cause findings, correction descriptions, parts replaced, labor performed, and mileage at each visit.

2

- **Warranty Claims (Approved, Submitted, Unapproved)**:  This section includes Honda's internal warranty claims data, including defect codes, symptom family names, symptom names, failed part numbers, and claim amounts. Critically, the eVRM and Honda's iN network from which it is retrieved contain information that does not appear on the paper repair orders customers receive.  Warranty claims that are approved and paid are coded with Honda's internal defect classifications—revealing what Honda internally acknowledged as the problem being a repeated problem or a singular event, which often differs from the generic correction description on the customer-facing repair order.  Conversely, repair visits in which the dealer coded the outcome as "no problem found" or "unable to duplicate" are reflected in the eVRM or related system within the Honda iN but may not generate a warranty claim at all, because they are not paid as warranty work.  These "no problem found" entries are significant: they document additional repair attempts that Honda's own system recorded but that Honda does not count when evaluating a vehicle for a lemon law buyback. The eVRM thus captures not only what Honda paid for under warranty, but what Honda saw and chose not to act on and how the dealer was reimbursed for the not verified repair work.

- **Customer Relations Case Files**:  This section includes records of all communications between the consumer and Honda's customer relations department, including case notes, call transcripts, and case resolution codes. These communications are directly relevant to Honda's pre-litigation knowledge of the consumer's complaint and Honda's decision to deny or defer a buyback request—a central element of both Song-Beverly liability and civil penalty exposure under Civil Code section 1794, subdivision (c).

- **Techline Case Records**:  This section includes the records of technical assistance cases opened by Honda dealers with Honda's Techline support, including the case dialogue between the dealer technician and Honda's technical consultants, diagnostic recommendations, and case resolution regarding subject vehicle issues.  Techline contacts are opened when a dealer cannot diagnose or repair a defect using standard procedures—making them direct evidence that the defect was beyond routine repair and that Honda corporate was on notice.

- **Diagnostic Data / Control Module History ("CMH") and OTA Update Records**:  This section includes records of every Over-The-Air firmware update pushed to the vehicle, including the module name, the "before" and "after" program IDs, the timestamp, and the success or failure code.  These records prove whether Honda attempted to address a defect through the same or different software updates rather than physical repair—a fact that bears directly on whether Honda's repair attempts were reasonable and whether Honda knew the defect could not be physically repaired.  These records

- **Vehicle Production Data**:  This section includes the vehicle's engine serial number, transmission serial number, assembly sequence, factory shift and team, and component completion dates.  This data links each vehicle to a specific manufacturing lot and is essential to any platform-wide defect analysis.

- **Vehicle Sale Data and Vehicle Service Contract Records**:  This section includes the complete sales transaction record, warranty registration, and any extended service contracts.  This data set is necessary to establish warranty coverage and the applicable statutory periods, as well as any other warranties or service contracts Honda provided to Plaintiff at the time of sale or thereafter.

- **Model Features Table**:  This section includes a comprehensive list of every feature and system installed on the vehicle, including engine displacement, transmission type, emissions level, and whether the vehicle is equipped with OTA capability.  This section is significant because it establishes what systems *should* appear elsewhere in the eVRM—if the Model Features Table confirms the vehicle has OTA capability, but the Control Module History section is absent from the produced eVRM, the production is incomplete on its face.

In short, a complete eVRM is the single most important document in a Song-Beverly case against Honda.  It is the functional equivalent of what plaintiffs currently obtain through dozens of separate requests for production, interrogatories, deposition questions, and subpoenas to third-party dealers—all consolidated into one electronically generated report that Honda can produce with a few keystrokes.  Requiring Honda to produce the eVRM is not asking Honda to do anything extraordinary—it is asking Honda to share the records its own systems already maintain.

> **B.      The Data Contained In An eVRM Report Is Relevant To All Song-Beverly Cases, Without Distinction.**

Honda suggests that whether or not eVRM data is relevant has to be determined on a case-by-case basis.  But the Legislature has already decided otherwise.

To streamline litigation over relief that the consumer is owed "promptly" (see Civ. Code, § 1793.2(d)), the Legislature enacted a new statute "to ensure that the information *most relevant* to a lemon law case is disclosed early in the litigation process and without the need to argue costly discovery disputes before the court."  (A.B. 1755, Assembly Standing Committee on the Judiciary (8/30/2024), italics added.)[1]

---

[1] Available under "Analysis" at https://digitaldemocracy.calmatters.org/bills/ca_202320240ab1755.  (See *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 46 ["A request for judicial notice of published material is unnecessary. Citation to the material is sufficient"].)

The data that manufacturers are now required to disclose early in the case tracks almost exactly the data in the manufacturer's eVRM databases.  This includes Code of Civil Procedure section 871.26(h)'s requirements that Song-Beverly defendants disclose:

- "Motor vehicle information reports, including build documentation, component information, and delivery details" (the eVRM's Vehicle Summary, Vehicle Production, and Vehicle Sale sections);

- The "[e]ntire warranty transaction history for the motor vehicle" (the eVRM's Warranty Claims and Repair Orders sections);

- A "[l]isting of required field actions applicable to the motor vehicle" (the eVRM's Campaign and Recall Records);

- "Records relating to communications between the manufacturer or dealership and the owner or lessee, including those related to repair orders or claims involving the vehicle" (the eVRM's Customer Relations Case Files);

- "Warranty policies and procedure manuals;"

- "Service manuals reasonably related to the nonconformities pertaining to the motor vehicle"; and

- Published TSBs and ISBs "for the same make, model, and year; and,

- "[W]here a pre-suit restitution request is made," all call recordings, the manufacturer's written policies for evaluating buyback requests, and any nonprivileged prelitigation evaluation of that request.

(See Code of Civ. Proc., § 871.26(h).)

Thus, ordering its production is not a novel or extraordinary measure.  It is what the Legislature already requires, consolidated into an efficient, electronic format that Honda can generate from its own systems.  It is also data that Honda will have to ultimately produce one way or another—either after lengthy and needless discovery disputes or early in the case pursuant to the standing order that Plaintiffs respectfully request the Court adopt to make those disputes unnecessary.

Honda hasn't even tried to explain why the relevance of eVRA data must be determined on a case by case basis.  Nor could it.  A plaintiff seeking a statutory buy back and a civil penalty award must prove both that the manufacturer failed to repair a warranted defect after a reasonable number of attempt, that the manufacturer has not promptly bought back the vehicle

5

or replaced it, and that the manufacturer willfully violated either of those obligations.  (See Civ. Code, §§ 1793.2, subd. (d), 1794, subds. (c), (e).)

The eVRM is directly relevant to these requirements:

- **Reasonable number of repair attempts (Civ. Code, § 1793.2, subd. (d)).**  The eVRM's Repair Orders section provides the complete service history—not just the visits the customer remembers or the paperwork the customer retained, but every visit at every Honda-authorized dealer nationwide.  The Warranty Claims section provides Honda's own internal classification of each defect.  And the Diagnostic Data section reveals whether Honda attempted software fixes through OTA updates using the same updates or different ones—a fact that bears directly on whether Honda's repair attempts were genuine.

- **Willfulness for civil penalties (Civ. Code, § 1794, subds. (c), (e)).**  The eVRM does not merely document the number of repair attempts.  It also exposes whether Honda's buyback decisions were made in good faith using reasonably available information—the failure of which amounts to a willful Act violation.

*Kwan v. Mercedes-Benz of N. Am., Inc.* (1994) 23 Cal.App.4th 174, 185–186 squarely held that "a manufacturer who refused a refund or replacement on the ground a reasonable number of repair attempts had not been made, without making any effort to gather the available information on repair history, might well be deemed to have acted willfully," because "[a] decision made without the use of reasonably available information germane to that decision is not a reasonable, good faith decision."

The full production of the eVRM data allows the plaintiff to stress test whether the manufacturer used all available information or willfully neglected its repair obligations.  After all, the eVRM contains a complete record of every warranty claim paid, every dealer pay visit coded "no problem found" or "unable to duplicate," every OTA software update attempted, every campaign and recall applicable to the vehicle, and every customer relations contact.  Much of this information does not appear on the paper repair orders that customers receive.  A dealer visit coded as "no problem found" and billed as dealer pay rather than warranty does not generate a warranty claim—but it is still a repair attempt that Honda's system recorded.

If Honda evaluates a vehicle for a lemon law buyback by reviewing only the warranty-paid claims and ignoring the dealer pay visits, the "no problem found" entries, the OTA update failures, and the Techline contacts—all of which are in the eVRM—then Honda is making a buyback decision "without the use of reasonably available information germane to that

6

decision."  Under *Kwan*, that is willful.  The eVRM is therefore relevant not only to the reasonableness and number of repair attempts, but to whether Honda's refusal to repurchase was made in good faith—or whether Honda deliberately limited the information it reviewed to justify a denial.  See (*Oregel v. American Isuzu Motors*, Inc. (2001) 90 Cal.App.4th 1094, 1103–1104 [109 Cal.Rptr.2d 583], internal citation omitted.) ("[T]he only affirmative step the Act imposes on consumers is to 'permit[] the manufacturer a reasonable opportunity to repair the vehicle.'  Whether or not the manufacturer's agents choose to take advantage of the opportunity, or are unable despite that opportunity to isolate and make an effort to repair the problem, are matters for which the consumer is not responsible.")

As *Krotin* recognized, "[a]n automobile manufacturer need not read minds to determine which vehicles are defective"—it "is capable of becoming aware of every failed repair attempt" through its own computerized systems.  (*Krotin v. Porsche Cars N. Am., Inc., supra,* 38 Cal.App.4th at p. 303.)  The eVRM is that system.  Honda's refusal to produce it does not make the knowledge disappear; it only prevents plaintiffs from proving it.

**C.     Requiring Production Of All eVRM Data Early On Substantially Reduces The Length And Burden Of Song-Beverly Cases.**

Because the eVRM is relevant to every Song-Beverly case and can be produced with minimal burden, there is no reason to delay its production—and every reason to require it early.  Early eVRM production serves the interests of efficiency, informed settlement, and judicial economy.  It ensures that mandatory settlement conferences are productive rather than performative, eliminates the need for piecemeal paper discovery, and prevents the discovery gamesmanship that has plagued Song-Beverly litigation for years.

**1.     eVRM Production Must Precede Mandatory Settlement Conferences.**

Honda has proposed mandatory settlement conferences as a central component of its case management framework.  Plaintiffs agree that MSCs are valuable.  But an MSC without eVRM production is an exercise in futility, for several reasons:

- **Plaintiffs cannot evaluate their own cases without the eVRM.** In a Song-Beverly case, the plaintiff's case depends on the repair history, the nature and persistence of the defect, the number and quality of repair attempts, and what the manufacturer and its dealers did to the subject vehicle.  The customer's own records—typically limited to

7

whatever paperwork the dealer handed them at pickup—are incomplete by definition. Customers do not receive copies of warranty claim data, BMIS battery test results, OTA update records, Customer Relations case notes, or campaign applicability information. They receive a paper repair order.  The eVRM contains the complete picture.

- **eVRM production will resolve cases and narrow the docket.**  Once plaintiffs have complete eVRM records, several things happen.  Cases with strong repair histories and clear defect patterns will settle quickly at MSC—both sides will have the information necessary to assess liability and damages.  Cases with weak repair histories, aftermarket modifications, or isolated complaints will become apparent to plaintiffs' counsel, who can evaluate them honestly and dismiss those that do not warrant prosecution.  This is exactly what the Court wants: informed decision-making that narrows the docket without the Court having to adjudicate 900 individual discovery disputes.

- **Without the eVRM, Honda's own proposed MSC framework is unworkable.**  Honda's proposed CMO limits MSC settlement statements to "each plaintiff's repair orders, warranty history, communications, and damages proof."  But if Honda has not produced the complete eVRM, plaintiffs do not have the complete warranty history, the complete communications record, or the complete set of repair orders and other subject vehicle information that Honda's dealers provide to the manufacturer about Plaintiff's own vehicle.

Plaintiffs explained to Honda why it needed the eVRM data to participate in mediation. But in refusing to sign off on Plaintiffs' proposal, Honda never addressed these concerns— instead raising a litany of objections, all of which are baseless.  (See § C, *post*.)

### 2.    If Not Directed to Produce the eVRM Data in Full, Honda Will Improperly Withhold Relevant Data—Resulting in Extensive Motion Practice and Protracted Litigation.

Without an order directing Honda to produce a complete set of eVRM data, Honda will selectively exclude data that is highly relevant.  This concern is not academic.

Manufacturers often take curiously narrow interpretations of discovery requests to avoid producing obviously relevant documents.  For example, in *Higginson v. Kia Motors America, Inc.* (2026) 341 Cal.Rptr.3d 732, a manufacturer falsely claimed in verified discovery responses to have *zero* documents on engine defects based on its view that (1) the court had defined what "engine defect" refers to, and (2) it searched for and found no documents that contained that word-for-word engine defect definition *verbatim*—a tactic that resulted in the very protracted litigation that this Court is seeking to prevent.  (See *id.* at p. 756 [ultimately requiring an appeal and a new trial].)

If not directed to produce all eVRM data in full, Honda will also refuse to produce relevant data based on some incoherent reason it won't share with the parties or the Court until compelled to do so through extensive discovery proceedings—at least in cases where it thinks it needs to conceal relevant documents to win. Honda's eVRM system allows sections to be selectively rendered or omitted when converting the data into a PDF—an ability that Honda exploits.

Honda's production in *Hodges v. American Honda Motor Co., Inc.* (Case No. 24LBCV01223), a case tried last month before Judge Kim in Department S27 of this courthouse, is illustrative. There, Honda produced an eVRM for a 2022 Honda HR-V (Exhibit 056) that was missing several of categories of data that *we know* Honda collects and has produced in other cases. The *Hodges* eVRM data did not include sections on Campaign and Recall Records, Diagnostic Data / Control Module History and other information.

The Hodges eVRM does not contain these sections—despite the fact that NHTSA's publicly searchable database confirms campaigns applicable to 2022 Honda HR-Vs; despite the fact that the Hodges Model Features Table confirms the vehicle has OTA capability that would generate Control Module History records; and despite the fact that *Honda produced this data when producing eVRM data in* Amirani (Exhibit 106, attached hereto).[2]

---

[2] The Hodges eVRM contained the following sections: a Vehicle Summary identifying the vehicle's VIN, make, model, year, trim, CVT transmission, and 4-cylinder engine; seven BMIS battery test records; four Repair Orders from two dealerships; two Warranty Claims (one approved battery replacement); Vehicle Production data; Vehicle Sale data; a Vehicle Service Contract record; and a Model Features Table. The Model Features Table confirmed the vehicle was equipped with "OVER THE AIR(FOTA)" capability.

In *Amirani* (Exhibit 106, attached hereto), Honda produced an eVRM for a 2019 Honda Odyssey. The Amirani eVRM contained: a Vehicle Summary identifying the J35Y7 V6 engine and ZF 9AT transmission; seven BMIS battery test records spanning 2019 through 2025; eleven Campaign and Recall Records, including NHTSA safety recalls, warranty extensions, and product updates with completion dates and associated service bulletin numbers; a Customer Relations case file with case notes documenting consumer contact with Honda corporate; two Diagnostic Data entries reflecting Control Module History and OTA update records; twenty-two Repair Orders across multiple dealers, including warranty, customer pay, and dealer pay visits; eight approved Warranty Claims with defect codes, symptom family names, and failed part information; Vehicle Production data with engine and transmission serial numbers; Vehicle Sale data; and a Model Features Table confirming OTA capability.

This is not a discovery burden issue.  The eVRM is generated electronically from Honda's existing Honda iN and can be retrieved by running a single vin.  Honda does not have to compile, collect, or assemble anything—it pulls a report.  The cost and burden to Honda of producing a complete, unfiltered eVRM for each subject vehicle is negligible compared to the cost of litigating 900 individual discovery disputes about the completeness of piecemeal paper production.  In 1995, *Krotin* observed that "[c]omputerized recordkeeping at dealership service departments could easily facilitate" the task of tracking defects.  (*Krotin v. Porsche Cars N. Am., Inc., supra,* 38 Cal.App.4th at p. 303.)   Three decades later, Honda has built exactly the system *Krotin* described—and now refuses to share its output.

Plaintiffs respectfully request an order directing Honda to automatically produce all eVRM data to moot the inevitable discovery battles that result from Honda's selective production of eVRM data at every trial —and the burden imposed on the parties and the courts in consequence.

The need for comprehensive eVRM production is underscored by the technological realities of modern automotive record-keeping.

### 3.    Producing paper records in piecemeal fashion will prolong litigation and result in incomplete productions.

It is 2026.  Honda's vehicles are equipped with telematics systems, Over-The-Air update capability, digital diagnostic interfaces, and centralized electronic record-keeping systems that capture every service visit, every warranty claim, every recall, and every customer communication in real time.  Honda's own systems—eVRM, iN, Techline, BMIS, NWS—are sophisticated electronic platforms that generate, store, and retrieve vehicle-specific data instantaneously.

Yet Honda's and other manufacturers' discovery posture in Song-Beverly litigation remains mired in a paper-based paradigm.  Honda produces individual repair orders as scanned PDFs.  Honda produces customer relations records in fragments.  Honda requires plaintiffs to subpoena individual dealerships for records that Honda already has in its centralized systems.  And Honda filters its eVRM production case by case, section by section, deciding unilaterally

10

which sections to render and which to omit—with no notice to plaintiffs and no way for plaintiffs to know what was excluded.

This causes delay in the litigation of cases too. When Honda produces a complete eVRM, the following disputes disappear: Were all repair orders produced? The eVRM contains them. Were warranty claims produced? The eVRM contains them. Were campaign and recall records disclosed? The eVRM contains them. Did Honda produce customer relations communications? The eVRM contains them. Were there technical communications regarding the subject vehicle between Honda and the dealer? The eVRM contains them. Were battery test records provided? The eVRM contains them. Did Honda disclose OTA updates? The eVRM contains them. Were DTC records captured? Honda's diagnostic tool, which was also identified in Plaintiff's CMO, contains them.

One document that erases any questions over what has or needs to be produced. No motion to compel. No meet and confer about missing categories. No discovery referee. No dispute about whether Honda's verified responses are accurate. The eVRM either contains all sections or it does not. The Court can verify completeness at a glance by checking whether the section headers are present.

> **4.** **Because Plaintiffs will also commit to promptly producing relevant documents in their possession, Plaintiffs' proposal would make virtually any document-based discovery disputes unnecessary.**

Plaintiffs are not asking for a one-sided production order. To the contrary, Plaintiffs propose that each plaintiff simultaneously produce all documents in his or her possession, custody, or control relating to the subject vehicle and the claims asserted, including:

- The purchase or lease agreement and all associated sales documents for the subject vehicle;
- All photographs and videos documenting the vehicle's defects, including dashboard warning lights, visible defect conditions, and any recordings of the vehicle exhibiting the complained-of symptoms;
- All documents supporting claims for incidental and consequential damages.
- Any repair orders from non-Honda dealerships or independent repair facilities. This category warrants emphasis: repair orders from Honda-authorized dealerships are

11

contained in the eVRM's Repair Orders section or in the Honda iN network within which the eVRM is located, documenting all repair visits—both warranty and non-warranty records. Plaintiffs' paper copies of Honda dealer repair orders are therefore largely duplicative of what Honda already has in its own systems in electronic form and in a single exhibit that can be provided to the Court for MSC and to the jurors at the time of trial. The only repair records in Plaintiff's possession not captured by the eVRM are visits to non-Honda facilities, which Plaintiff will produce in advance of the MSC/Mediation.

- Any other documents in the plaintiff's possession, custody, or control relevant to the claims or defenses in the action.

Plaintiffs' proposal would consequently make discovery disputes over document production *on both sides* largely unnecessary, which in turn will expedite the litigation in Song-Beverly cases considerably.

### D.    Honda's Conclusory Objections Are Baseless.

Rather than engaging with Plaintiffs' reasons for seeking the eVRM documents in any meaningful way, Honda summarily raises a number of objections. None are meritorious.

Honda argues that the eVRM is not a document kept in the regular course and scope of business at AHM. That's misleading at best. The eVRM is a database that Honda and all manufacturers maintain with different names which in the industry is called the manufacturers dealer portal. Data can be culled from it to produce a report, as Honda knows full well. Honda (selectively) produces eVRM reports in other cases all of the time. That the data is not document ready unless Honda pushes a button is irrelevant.

Honda argues that the eVRM contains information related to matters that, in its view, are not relevant. This is not the law. This is information regarding Plaintiffs' own vehicles, it is relevant, and it must be produced in full. *Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1162 ("KCI, not the least bit abashed even on appeal, *admits* it had the evidence all the time and withheld it throughout the proceedings because, in *its* opinion, the reports were irrelevant or cumulative or potentially privileged or otherwise inadmissible. How dare KCI and its attorneys play judge and jury in the trial court and then come before this court and argue the propriety of that utterly indefensible conduct! We are appalled that but for a fluke phone call from a Texas attorney, the Shermans would have remained forever unaware they had

12

been cheated out of a fair trial."). And even if some of the information is not relevant, so what?Every document responsive to a discovery request will contain some information that the producing party will deem irrelevant.  Those documents must be produced anyway where, as is indisputably true as to the eVRM data, they also contain relevant information.  This makes sense.  The inclusion of irrelevant information, by definition, cannot prejudice Honda.  In contrast, Honda's decision to withhold plainly relevant data based on its unilateral and self-interested determination that *some* content may be irrelevant would plainly prejudice plaintiffs.  Indeed, the law is clear that information regarding a plaintiff's own vehicle—which is at issue in the eVRM documents—is relevant and must be produced.

Honda also says the data may contain multiple levels of hearsay.  Even assuming that's true, that's neither here nor there.  Questions over hearsay concern the admissibility of the data.  Hearsay concerns do not make the data irrelevant or absolve Honda's obligation to produce it—either in any standing order early on or later in the litigation.

Simply put:  Nothing Honda has said is material to Plaintiffs' request.  The Court should adopt Plaintiffs' proposal, which would substantially expedite the lemon law cases before it.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that, as part of any Case Management Order, the Court direct manufacturers to produce all eVRM data and plaintiffs to produce all relevant documents in their possession within 60 days after the answer or other responsive pleading is filed, consistent with the deadlines set for disclosures under Code of Civil Procedure section 871.26, subdivisions (f) and (h).  Following both parties' production of documents, the Court should schedule mandatory settlement conferences.

This approach is efficient, lawful, and fair.  It gives Honda what it says it wants—settlement conferences with informed parties and a narrowed docket.  It gives Plaintiffs what they need—the manufacturer's own records about their own vehicles.  And it gives this Court what it has asked for—a coordinated framework that avoids 900 individual discovery disputes and moves cases toward resolution through meaningful mandatory settlement conferences rather than uninformed posturing.

PLAINTIFFS' BRIEF IN SUPPORT OF EARLY eVRM PRODUCTION

Dated: April 13, 2026

Respectfully submitted,

**STRATEGIC LEGAL PRACTICES, APC**

_____/s/ Payam Shahian_____

Payam Shahian, Founding Partner
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Tel: (310) 929-4900
*Attorneys for Plaintiffs*

14