Chambers of the Hon. Noël Wise
United States District Judge
United States District Court, Northern District of California
Robert F. Peckham Federal Building & U.S. Courthouse
280 South First Street
San Jose, CA 95113

**Re: Copy of Anonymous State Bar Complaint Regarding Payam Shahian, Esq., Strategic Legal Practices, APC**

Dear Judge Wise:

We are a group of current and former attorneys of Strategic Legal Practices, APC. We are writing to inform the Court that we have submitted the enclosed anonymous complaint to the State Bar of California regarding the Firm's managing partner, Payam Shahian, Esq. (State Bar No. 228406).

Because the complaint concerns practices that relate to matters before Your Honor, including the Court's prior sanctions order and the in-person hearing in Q2 2026, we are providing a copy for the Court's information. We are not asking the Court for relief in any particular case.

We are submitting this anonymously out of fear of retaliation, particularly for the member of our group who remains employed at the Firm.

Respectfully,

Current and Former Attorneys of Strategic Legal Practices, APC

Enclosure: Anonymous Complaint Regarding the Practices of Payam Shahian, Esq.

**ANONYMOUS COMPLAINT REGARDING THE PRACTICES OF
PAYAM SHAHIAN, ESQ. (State Bar No. 228406)
Managing Partner, Strategic Legal Practices, APC**

**Submitted anonymously by current and former attorneys of Strategic Legal Practices, APC**

**Method of Submission and Copies**

This complaint is being submitted through the State Bar of California's Attorney Misconduct Online Complaint form. A printed copy is also being sent by U.S. Mail to the State Bar's Office of Chief Trial Counsel, Intake Unit.

A copy is also being provided to:

Hon. Noël Wise
United States District Judge
United States District Court, Northern District of California

## 1. Who We Are

This complaint is submitted jointly by a group of attorneys who formerly worked at Strategic Legal Practices, APC ("the Firm"), together with at least one attorney currently employed there. Collectively, our group has had direct exposure to the Firm's case-management and filing systems, staffing, settlement operations, and meetings with Mr. Shahian, the Firm's principal shareholder and managing partner.

We are submitting anonymously because we fear retaliation from Mr. Shahian, professionally and otherwise. We have watched attorneys who raised these concerns internally face retaliation, dismissal, or pressure to resign. We nonetheless believe we have an ethical obligation to report this conduct to the State Bar, because it has harmed and continues to harm clients and the courts.

## 2. Purpose and Scope

This complaint is limited to conduct that members of our group personally observed, or statements made directly to or in the presence of a member of our group. Where a statement became known to us through others at the Firm, we say so. We have intentionally omitted client names, case numbers, and the substance of any client's legal advice, and we have not attached Firm documents. Where records exist, we identify them so they can be obtained through appropriate legal process.

We ask that this complaint and any information that could identify its authors be kept confidential and not disclosed to Mr. Shahian or the Firm. This is especially important for the member of our group who remains employed at the Firm. Mr. Shahian has consistently terminated or forced out attorneys who raised concerns about these practices, and we fear that our currently employed colleague would be targeted for termination if identified.

## 3. Practices Observed

### *A. Court filings submitted without attorney review*

Beginning in 2023, and becoming standard practice over roughly the past two years, motions and other court filings were drafted by law clerks, legal assistants, paralegals, and staff based in India. None of these people are licensed to practice law in California. These filings were filed and served bearing the names and electronic signatures of Firm attorneys. Attorneys may have reviewed samplings of this work, but not every motion was reviewed by an attorney before filing.

Mr. Shahian directed and prioritized an automated, AI-assisted production model over attorney review. This made it impossible for attorneys to review every document filed under their signatures. When attorneys challenged the practice and the automation behind it, Mr. Shahian used their complaints against them, often leading to their dismissal or resignation.

Specifically:

- The Firm's workflows include automation designed to remove human involvement from document production and filing.

- Hundreds of filings were generated through automated systems. After a small number were reviewed, the remainder were directed to be filed in bulk. Former Firm data engineers who worked there in 2025 and part of 2026 can confirm this. They were directed to file these documents through automation without attorney review beforehand.
- Attorneys repeatedly complained that they could not review all documents filed under their names.
- The volume of output from law clerks, legal assistants, paralegals, and India-based staff exceeded what the Firm's attorneys could review.
- Completed documents produced by the India-based team often went directly into file-and-serve packages and were sent to legal support staff to file and serve, with no required attorney review step.
- These workflows run within the Firm's two primary digital systems.

Records that would confirm this include document-management audit logs, e-filing timestamps, user-access logs, and the automated workflow configurations in the Firm's two primary digital systems, all maintained by the Firm. Attorneys who were terminated or chose to resign in 2025 and 2026 because they disagreed with these practices and were not comfortable filing documents they could not review can also confirm them.

*B. Managing partner shielded from sanctions while other attorneys bore them*

Mr. Shahian directed that his own name not appear on the automated motions and court documents described in Section A, even though he designed and controlled the practices that produced them. During this period, sanctions against the Firm exceeded $20,000 per day.

Because Mr. Shahian kept his name off these filings, courts imposed sanctions, and personal accountability, on the attorneys whose names appeared on the motions and pleadings, rather than on the person responsible for the practices behind them. Former partner Tionna Carvalho and numerous other Firm attorneys were personally sanctioned as a result, and courts were holding them individually accountable for filings produced under Mr. Shahian's system. Ms. Carvalho left the Firm in the first week of May 2026 while facing those sanctions. Mr. Shahian, the Firm's owner and managing partner, received no comparable direct sanctions.

We believe this arrangement was deliberate, intended to protect Mr. Shahian's own license and disciplinary record while exposing us and other Firm attorneys to sanctions solely because our names appeared on the filings. Given the volume Mr. Shahian required, it was impossible for us to review every document filed and served under our names.

The Firm's sanctions-tracking records, the sanctions orders themselves, and the court dockets would confirm which attorneys were named and sanctioned, and that Mr. Shahian was not. See also Section H.

*C. Caseloads beyond the Firm's supervisory capacity*

Mr. Shahian assigned attorneys caseloads that could not be competently handled given the Firm's case volumes and staffing, and relied on automation and AI to absorb the workload.

For example, Juan Camilo Fernandez Morales (State Bar No. 367372), a newly licensed attorney with no formal training, was assigned as Trial Attorney for an entire group of manufacturers. No

single attorney could feasibly manage that caseload, let alone one so new to practice. Mr. Fernandez repeatedly asked for more support staff, additional attorneys, and training, because he had not been set up to succeed. Those requests went unmet. Mr. Fernandez resigned from the Firm in May 2026. His written resignation stated that he was "forced to resign." It explained that he did not want to leave, but could not continue to put his bar license at risk by accepting these practices.

His experience was common at the Firm. Most of us faced a sink-or-swim environment and struggled to do right by our clients under this leadership. When we asked for support, Mr. Shahian promised change that never came. He placated our requests without following through, a consistent pattern in how he led the Firm.

Members of our group know the contents of Mr. Fernandez's letter because we were able to obtain a copy and read it ourselves. His resignation letter, held by the Firm and by Mr. Fernandez, would confirm these statements, and we ask that the State Bar obtain a copy.

Attorney turnover at the Firm has been high. Departing attorneys have cited the volume of sanctions and the use of their signatures on unreviewed filings.

***D. Concealment of case volume from courts***

The Firm's total case count was not accurately disclosed to courts, creating an appearance of supervisory control that did not exist. Shortly after Ms. Carvalho left the Firm in the first week of May 2026, Mr. Shahian stated, in words to the effect of, "We cannot have a firm with this many cases which has only one partner." Soon after, he promoted two supervising attorneys to Partner, with no evident deliberation about the effect on their cases or supervisory responsibilities.

***E. Directed campaign to settle cases for nominal amounts***

In Q2 2026, the Hon. Noël Wise of the U.S. District Court for the Northern District of California began investigating and expressing concern about the Firm's practices. She sanctioned the Firm $10,000 and required that her order be read by all Firm attorneys.

After that, Mr. Shahian directed the Firm's non-attorney settlement team to call hundreds of clients and urge them to accept settlement offers as low as $500 to $1,000. Settlements this low had not been the norm in the Firm's history. The cases were chosen from a list Mr. Shahian wanted to "dump." These were cases the Firm had signed under his authorization and later lacked the capacity to handle. There was little to no review of each client's individual facts. At his direction, the settlement team used generic talking points telling clients that, based on their facts, they should accept. The non-attorney staff were following Mr. Shahian's instructions.

***F. Settlement advice and client outcomes***

Clients were advised to reject settlement offers that appeared reasonable, and in multiple cases those cases were later dismissed on statute-of-limitations grounds. In one such case, the client was directed to reject multiple offers. His case was later dismissed on statute-of-limitations grounds, and he sued the Firm.

Mr. Shahian learned of this situation only when he received notice of the client's lawsuit. This is just one example of how his lack of oversight allowed failures like this to happen. Yet he had assured our attorney group that he had a strong handle on the Firm's caseload and that there was nothing to be concerned about.

*G. Failure to communicate with clients*

Clients were not consistently informed of significant developments in their cases, including:

- dismissal of their cases;
- their cases being at severe risk of dismissal; and
- motions for summary judgment granted against them.

According to a former Firm attorney, this problem began in fall 2025. The caseload and the number of clients needing to be contacted had grown so large that timely notification was impossible. The attorney reported the backlog to Mr. Shahian, but it continued. Cases dismissed in fall 2025 still had not been communicated to the affected clients well into Q1 and Q2 of 2026.

The State Bar can verify this by comparing the dates on which courts dismissed these cases with the dates clients were actually notified. We urge the State Bar not to rely on Mr. Shahian's account of when client calls took place. We believe he has covered up failures like these with inaccurate records, and that the clients' own phone records will contradict the dates he claims.

*H. Shifting blame to Ms. Carvalho*

Mr. Shahian's longtime partner of approximately ten years, Tionna Carvalho, left the Firm in the first week of May 2026. Both before and after her departure, Mr. Shahian repeatedly blamed her for the Firm's failures, with remarks such as "Tionna failed to do this" or "Tionna failed to do that."

He never took ownership of these failures. Instead, he shifted responsibility to Ms. Carvalho for problems that stemmed from his own neglect and absence as managing partner. The Firm carried well over 10,000 cases, and at one point reportedly more than 15,000, and it was his responsibility as managing partner to ensure those cases were properly managed. This pattern of blame-shifting is consistent with how sanctions fell on Ms. Carvalho rather than on Mr. Shahian, as described in Section B.

*I. Stated intent not to comply with a federal court*

In Q2 2026, while preparing for an in-person hearing before Judge Wise, Mr. Shahian made remarks in the Firm's offices to the effect of:

*"That bitch is trying to manage my firm and I am not going to comply, as she will use the data I produce against me if I give it up."*

Word of this statement spread among the Firm's attorneys. Mr. Shahian then expressed the same attitude more openly on a conference call with the Firm's attorneys, telling us that Judge Wise's concerns were a waste of time and without merit. In doing so, he disparaged a sitting federal judge in front of the Firm's entire attorney group. He also assured us that everything was under

control, which we believe he knew to be untrue, given the sanctions, dismissals, and review failures described in this complaint.

**4. Rules and Statutes Potentially Implicated**

We believe the conduct above may implicate, among others:

- California Rules of Professional Conduct 1.1 (competence) and 1.3 (diligence)
- Rules 1.2(a) and 1.4.1 (client authority over settlement; communication of settlement offers) and 1.4 (communication)
- Rule 3.3 (candor toward the tribunal)
- Rules 5.1 and 5.3 (supervisory responsibilities for lawyers and nonlawyer assistants)
- Rule 5.5 (assisting the unauthorized practice of law)
- Rules 8.4(c) and 8.4(d) (dishonesty; conduct prejudicial to the administration of justice)
- Business and Professions Code section 6068(m)

**5. Records That May Corroborate This Complaint**

The Firm holds the following records unless otherwise noted:

- Document-management and e-filing logs showing who drafted, reviewed, and filed each document
- Automated workflow configurations in the Firm's two primary digital systems
- Sanctions orders and internal sanctions tracking, including orders naming individual attorneys such as Tionna Carvalho
- Case-volume and caseload reports
- Settlement-team call lists and talking points
- Court dismissal dates compared against client notification records and client phone records (see Section G)
- The May 2026 resignation letter of Juan Camilo Fernandez Morales (State Bar No. 367372), held by the Firm and by Mr. Fernandez (see Section C)
- Resignation letters and employment records of attorneys who left the Firm in the second half of 2025 and in 2026. Some attorneys stayed only two or three days before leaving, once they saw Mr. Shahian's practices firsthand and chose to protect their licenses.
- Court dockets and orders in matters before the Hon. Noël Wise, N.D. Cal.

**6. Potential Witnesses**

Witnesses with firsthand knowledge include:

- Juan Camilo Fernandez Morales (State Bar No. 367372), former Firm attorney (resigned May 2026)
- Attorneys who were terminated or resigned from the Firm in 2025 and 2026
- Former Firm data engineers employed in 2025 and part of 2026, who were directed to file documents through automation without attorney review

We also refer the State Bar to the proceedings before the Hon. Noël Wise.

**7. Publicly Available Sources**

- Glassdoor reviews of Strategic Legal Practices, APC, posted by current and former employees,

which describe Mr. Shahian's management style and the Firm's practices

**8. Closing**

We make this complaint in good faith, solely to report conduct we believe has harmed clients and the courts. We urge the State Bar to investigate.

Respectfully submitted,

Current and Former Attorneys of Strategic Legal Practices, APC

cc: Hon. Noël Wise, United States District Judge, U.S. District Court, Northern District of California